The People of the State of New York on the Complaint of Daniel Curry, Respondent, *v.* Dominick James Adduci, Appellant.

Court of Special Sessions of City of New York, Appellate Part, First Department, March 25, 1942.

*H. Willard Griffiths*, for the appellant.

*William C. Chanler, Corporation Counsel* [*Irving Galt* of counsel], for the respondent.

Bayes, Ch. J.  Appeal by defendant from judgment rendered in the Magistrates' Court of the City of New York, Municipal Term, Part I, Borough of Manhattan, on April 18, 1941, convicting him of a violation of subdivision b of section B36–29.0 of the Administrative Code of the City of New York, and imposing a fine of twenty-five dollars or ten days in the city prison, execution of sentence being suspended.

The material portions of the complaint verified by an inspector of the department of markets of the city of New York follow: " That on the 5th day of February, 1941, at the City of New York, and County of New York, Dominick James Adduci, 229 James Street, Inwood, Long Island (now here) did unlawfully transport a load of coal through the streets of the City of New York, vicinity of 6th Avenue and Broome Street, City and County of New York, without having a coal truck license, in violation of Chapter 36, Article 4, Section B36–29.0 b of the Administrative Code of the City of New York."

The above-mentioned section of the Administrative Code follows:

" § B36–29.0. Vehicles; License Required.— a. It shall be unlawful for any person to use or cause to be used a vehicle for the transportation of solid fuel, in quantities in excess of one-half ton, without a license for each vehicle so used.

" b. Any person operating a vehicle for the transportation of solid fuel without having a license therefor as provided for herein shall be guilty of a violation of the provisions of this article and upon conviction thereof shall be punished by a fine of not more than twenty-five dollars, or by imprisonment for not more than ten days, or by both such fine and imprisonment."

Defendant concededly had no license.

From the testimony of the inspector it appears that on February 5, 1941, he observed defendant at the official city coal scale at Sixth avenue and Broome street, New York county; that defendant had pulled in on the scale to leave the certificate of origin; that upon inspection he observed defendant did not have a 1941 coal truck license plate and in response to questioning said he was going to Merrick and exhibited a ticket attached to the bill of origin which indicated the coal was going to Bernard Koenk, 56 Merrick avenue, Merrick, L. I.; that defendant said he was delivering it at a coal yard there and that the same address was given on all the bills of lading that defendant had with him at the time.

The record discloses that the coal, in accordance with the certificate of origin, was in the course of transportation from Maryd, Pa., to B. & J. Coal Company, Merrick, L. I.

Defendant testified he loaded the truck at the breaker of the Maryd mine located in the village of Maryd, Pa.; that he was employed as chauffeur by the B. & J. Coal Company, driving the coal truck between Maryd, Pa., and Merrick, L. I.; that the truck and coal yard at Merrick belonged to his employer and that he, in the course of his employment, makes daily trips from Pennsylvania to Merrick with a truck load of approximately thirteen tons of coal.

The decision herein turns upon questions of law. Various points are urged by defendant-appellant including the contention that all the requirements of article 4 of chapter 36 of the Administrative Code were, so far as applicable, complied with by him. In our opinion defendant's position upon that point is well taken and the judgment should be reversed.

In this case, as well as in all cases, it is important to adhere strictly to the facts as disclosed by the record. In brief, we find that although some thirteen tons of coal were in transit from Maryd, Pa., to Merrick, L. I., there is no evidence of any sale

or attempted sale in the city of New York. Upon reaching New York city, what was defendant required by the Local Law to do? If he were a local dealer operating in and within the city of New York he would be obliged to be licensed by the commissioner of markets and attach to his vehicle the license plates pursuant to sections B36-30.0 and B36-31.0. If, on the other hand, he was transporting the coal from Pennsylvania to Merrick, L. I., passing *through* the city of New York, as appears from the record, what was he required to do? Do we find anywhere in chapter 36 of the Administrative Code provisions applicable to him in that situation? Answering affirmatively, we note that section B36-65.0 provides that where any load of anthracite is being transported through the city for sale and delivery *outside* the city, the driver " of any vehicle transporting any such load of anthracite shall, in any event, file a duplicate original of the required certificate of origin with a duly licensed weighmaster at the nearest available official scales after crossing the boundary line of the city." As to meeting this requirement it appears from defendant's testimony that when he went to the city scale he found three or four men in the office. Then he adds: " We have to go there and leave our bill of origin; they stamp it. They get one and I get one. When I handed the bill of origin in the window there he says," etc. Since section B36-65.0 exempted defendant from having the coal weighed, there was nothing more for him to do. (See § B36-59.0, as to necessity of the certificate of origin; and § B36-60.0, as to its form and manner of signature.)

From an examination of chapter 36 as a whole we cannot escape the conclusion that the city legislature made provision (a) for the licensing of local coal dealers operating *in and within* the city of New York and (b) for identifying, by means of the certificate of origin, those engaged in transporting coal from outside the State, either for sale and delivery within the city, or transporting coal through the city for sale and delivery outside the city.

From a reading of the opinion of the trial court we find the statement that although " this law is entitled the ' Solid Fuel Law ' it is commonly known as the ' Anti-Bootleg Coal Law.' " Justification for this statement is found in what is a matter of common knowledge, viz., that at the time of the enactment of the law (Laws of 1937, chap. 929) and for some time prior thereto, vast quantities of stolen coal, including coal of inferior grade, were being brought into the city from outside the State and disposed of in such a way as to work fraud and deceit upon the consuming public, and at the same time injure local coal dealers handling standard quality coal at standard prices. In this situation the

city legislature was justified in taking every legal measure designed to curb and eliminate this harmful practice. By an examination of section B36–60.0 of the Administrative Code it will be seen that detailed information under five subdivisions must be set forth in the certificate of origin. This no doubt was designed to facilitate the work of the city inspectors and police officials in running down and apprehending violators of the law.

Holding, as we do, that defendant did not violate the law, we do not pass upon the question of constitutionality which is discussed at length by both parties to the appeal As to this we may note that the Court of Appeals has held that section 197-g of the State Agriculture and Markets Law, requiring inspection of coal entering New York by truck over the border to insure correct weight of coal, does not unduly interfere with interstate commerce. (See *Rueffer* v. *Dept. of Agriculture & Markets*, 279 N. Y. 16. See, also, *People* v. *Rueffer*, Id. 389, wherein it was held that section 197-f of the State Agriculture and Markets Law, prescribing markings for vehicles used in transporting coal or coke, is within the police power of the State in view of the practice of transporting bootleg or stolen coal into New York, notwithstanding that interstate commerce was indirectly or incidentally involved.)

It is not necessary to rule upon other questions raised by appellant which include (a) the sufficiency of the complaint, (b) the alleged conflict between article 4 of title B of chapter 36 of the Administrative Code and the Vehicle and Traffic Law of the State, and (c) the validity of the provision contained in section B36–59.0 requiring a certificate of origin.

Accordingly the judgment should be reversed and the complaint dismissed.

COOPER and KOZICKE, JJ., concur.